**Opinion issued October 25, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00437-CV

————————————

## IN RE MANTLE OIL & GAS, LLC, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

## O P I N I O N

Relator, Mantle Oil & Gas, LLC ("Mantle Oil"), petitioned for writ of mandamus seeking to vacate the trial court's order denying its motion to dismiss on grounds of forum non conveniens filed against the real parties in interest, Peggy Alcee, Geraldine Davis, Courtney Jarvis, Stanley Keys, Hilda McBride, LeShanda McBride, Perry McTou, Douglas Miles, Hally Mollese, Connie Moton-Diop,

Charlie Moton, Margie Moton, Lionel Moton, Alex Williams, Ché Williams, Eric Williams, Haven Williams, Geraldine Worley, Joseph Worley, Michael Worley, Terry Worley, Wilfred Worley, and Mary Anne Worley (collectively, "the Alcee plaintiffs").[1]

We conditionally grant the petition for writ of mandamus.

## Background

Mantle Oil, a Texas limited liability company with its company headquarters located in Friendswood, Texas, is involved in oil and gas exploration and operates the Dugas & Leblanc Co., Ltd. No. 1 Well ("the Well") in Assumption Parish, Louisiana. On August 11, 2010, during completion operations conducted by Cajun Well Services, Inc. ("Cajun Well"), a Louisiana-based contractor hired by Mantle Oil, the Well blew out at the surface, causing the release of salt water, hydrocarbons, and formation materials. Mantle Oil contends that a blowout preventer, installed by Cajun Well, failed and caused the blowout. Eleven days later, on August 22, 2010, the Well "naturally bridged over," and the release of materials from the Well stopped.

Shortly after the blowout, over 4,000 Louisiana residents and landowners ("the Louisiana-suit plaintiffs") filed four separate lawsuits against Cajun Well and

---

[1] The Honorable Susan Criss, Judge of the 212th District Court of Galveston County, Texas, Respondent. The underlying lawsuit is *Peggy Alcee, et al., Individually and on Behalf of Those Similarly Situated v. Mantle Oil & Gas, LLC*, No. 11-CV-1312 (212th Dist. Ct., Galveston Cnty., Tex.).

Mantle Oil in Louisiana state court. The Louisiana court ultimately consolidated these lawsuits. The Louisiana-suit plaintiffs alleged that, as a result of the blowout, officials shut down a nearby highway, which forced local residents and "general traffic" to "travel an approximate 8 mile, one-way detour" on "curvy, substandard highways" until the Well was shut in, approximately sixteen days after the blowout. The Louisiana-suit plaintiffs also alleged that property owners in the area "have been denied use of their property as a result of the oil release," that some of the plaintiffs "were exposed to hazardous fumes causing physical injuries as a result of the sued upon incident," and that "[t]he plume of vapor migrated onto some of the [plaintiffs'] property, not only causing physical injuries to the [plaintiffs'] personal health but also creating a nuisance and creating fear on the part of the [plaintiffs] to go outside[,] thus depriving them the full use of their property."

The Louisiana-suit plaintiffs alleged, among other things, that Cajun Well and Mantle Oil negligently and recklessly failed to properly inspect and monitor the construction of the Well, to contain leaks, to properly construct and operate the Well, to conduct proper and regular testing of the Well, and to adequately warn them of the dangers of the Well. The Louisiana-suit plaintiffs sought compensatory damages and other "appropriate relief," including the remediation of affected property.

3

On August 11, 2011, exactly one year after the blowout, Peggy Alcee, a resident of Assumption Parish, Louisiana, sued Mantle Oil in Galveston County and asserted claims for private nuisance, trespass, negligence, and gross negligence ("the Galveston County suit"). Alcee alleged that "[t]his case is governed by both Texas and Louisiana law," although she did not specify which parts of the suit were governed by Texas law, and she sought economic and compensatory damages, punitive damages, "[m]edical monitoring as allowed by the laws of the state of Louisiana," attorney's fees, costs, and interest. The next day, Alcee amended her petition, and twenty-two other residents of Assumption Parish joined as plaintiffs, asserted the same claims as in the original petition, and sought class certification.[2] The Alcee plaintiffs alleged that Mantle Oil failed to maintain the Well, failed to operate the Well in a safe manner, and failed to follow its own procedures to prevent a release of harmful substances from the Well.

Mantle Oil answered the Galveston County suit and simultaneously moved to dismiss on the basis of forum non conveniens, arguing that Louisiana was an adequate alternate forum, especially given that a suit arising out of the blowout was already pending in Louisiana state court. Mantle Oil argued that because (1) all of the Alcee plaintiffs were Louisiana residents, (2) the blowout occurred in

---

[2] Eleven of these plaintiffs are also plaintiffs in the suit pending in Louisiana state court: Stanley Keys, LeShanda McBride, Connie Moton-Diop, Charlie Moton, Lionel Moton, Haven Williams, Eric Williams, Michael Worley, Terry Worley, Wilfred Worley, and Mary Ann Worley.

4

Louisiana and affected Louisiana real property, (3) Cajun Well, the contractor working on completing the Well at the time of the blowout, was a Louisiana company, and (4) a majority of the fact witnesses were Louisiana residents and thus were beyond the reach of compulsory process in Texas, it was far more convenient for the suit to be heard in Louisiana than in Galveston County, notwithstanding Mantle Oil's company headquarters in Friendswood.

In response, the Alcee plaintiffs highlighted the facts that Mantle Oil is a Texas company and that it made all decisions regarding the Well from its Texas headquarters, that it consulted with Texas-based companies to clean up the surrounding property after the blowout, and that they "will be treated in the greater Houston area for all exposure suffered from the release of toxic chemicals." The Alcee plaintiffs also argued that Louisiana was not an adequate alternate forum because their claims would be barred under Louisiana's statute of limitations, they sought damages for medical monitoring, which were not being sought by the Louisiana-suit plaintiffs in the already-pending consolidated Louisiana suit, and they also sought punitive damages, which were unrecoverable under these circumstances in Louisiana.

The trial court agreed with the Alcee plaintiffs and denied Mantle Oil's motion to dismiss for forum non conveniens. This mandamus proceeding followed.

5

## Mandamus Standard of Review

Mandamus relief is appropriate to remedy an improper denial of a motion to dismiss for forum non conveniens. *In re Omega Protein, Inc.*, 288 S.W.3d 17, 19–20 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) (citing *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 679 (Tex. 2007)); *see also In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 923 (Tex. 2010) (per curiam) ("An appeal is not adequate when a motion to dismiss on forum non conveniens grounds is erroneously denied, so mandamus relief is available if it is otherwise warranted."). We review a trial court's ruling on a motion to dismiss for forum non conveniens for an abuse of discretion. *See In re ENSCO*, 311 S.W.3d at 923; *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008). A trial court commits a clear abuse of discretion when its action is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003). A trial court has no discretion in determining what the law is or in applying the law to the particular facts. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004).

## Motion to Dismiss for Forum Non Conveniens

Texas Civil Practice and Remedies Code section 71.051 governs motions to dismiss for forum non conveniens in all actions for personal injury or wrongful death. *See In re Pirelli Tire*, 247 S.W.3d at 674; *Tullis v. Ga.-Pac. Corp.*, 45

6

S.W.3d 118, 123 (Tex. App.—Fort Worth 2000, no pet.) ("Section 71.051 now provides the forum non conveniens law in Texas governing all actions for personal injury or wrongful death."). Section 71.051(b) provides:

> If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action. In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court shall consider whether:
>
> (1) an alternate forum exists in which the claim or action may be tried;
>
> (2) the alternate forum provides an adequate remedy;
>
> (3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;
>
> (4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claims;
>
> (5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and
>
> (6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

7

TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b) (Vernon 2008); *see also In re Pirelli Tire*, 247 S.W.3d at 675 ("[T]he common-law doctrine [of forum non conveniens] permitted a court possessing jurisdiction over a dispute to decline to exercise it when 'for the convenience of the litigants and witnesses and in the interest of justice, the action should be instituted in another forum.'") (quoting *Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n.2 (Tex. 1994)). "The word 'shall' in the statute 'requires dismissal of the claim or action if the statutory factors weigh in favor of the claim or action being more properly heard in a forum outside Texas.'" *In re ENSCO*, 311 S.W.3d at 924 (quoting *In re Gen. Elec.*, 271 S.W.3d at 686).

Section 71.051 does not require that the movant prove every statutory factor or that every factor must weigh in favor of dismissal for the movant to be entitled to relief. *See In re Gen. Elec.*, 271 S.W.3d at 687. The statute also does not contain any language placing the burden of proof on a particular party; instead, section 71.051 "simply requires the trial court to consider the factors, and it must do so to the extent the factors apply." *Id.* To the extent evidence is necessary, the trial court must base its decision on the weight of the evidence, and it is entitled to "take into account the presence or absence of evidence as to some issue or position of a party." *Id.*

8

The doctrine of forum non conveniens has always afforded great deference to the plaintiff's choice of forum. *In re Pirelli Tire*, 247 S.W.3d at 675; *In re Omega Protein*, 288 S.W.3d at 21. However, the doctrine "generally affords substantially less deference to a nonresident's forum choice." *In re Pirelli Tire*, 247 S.W.3d at 675; *In re Omega Protein*, 288 S.W.3d at 21; *see also Quixtar, Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (per curiam) (holding same in common-law forum non conveniens context and noting fact "that a plaintiff is not a Texas resident speaks directly to a defendant's burden" in establishing propriety of dismissal). The forum non conveniens doctrine recognizes "that the plaintiff's choice must sometimes yield in the public interest, and in the interest of fundamental fairness." *In re Pirelli Tire*, 247 S.W.3d at 675. Dismissal on forum non conveniens grounds is appropriate when sufficient contacts between the defendant and the forum state exist so as to confer personal jurisdiction, but the case itself has no significant connection to the forum state. *Id.* at 675–76; *In re Omega Protein*, 288 S.W.3d at 21. "'[I]t is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the State.'" *In re Pirelli Tire*, 247 S.W.3d at 676 (quoting *In re Smith Barney*, 975 S.W.2d 593, 598 (Tex. 1998)).

9

### A.    *Undisputed Relevant Facts*

It is undisputed that the underlying incident in this case involved the blowout of a well located in Assumption Parish, Louisiana. All of the Alcee plaintiffs are Louisiana residents, and all property that they alleged was affected by the blowout is located in Louisiana. Any physical injuries or medical conditions that the plaintiffs allegedly suffered from the blowout occurred in Louisiana, and any medical treatment that the Alcee plaintiffs have undertaken thus far as a result of the blowout has been received in Louisiana. All remedial action concerning the Well and the blowout, such as property remediation, the drilling of a relief well, and plugging operations, occurred in Louisiana. Only Louisiana governmental agencies, such as the Louisiana Department of Natural Resources and the Louisiana Department of Environmental Quality, were involved with the Well before, during, and after the blowout, and the employees of these agencies are Louisiana residents. Cajun Well, which Mantle Oil hired to conduct completion operations relating to the Well, is a Louisiana company, and Cajun Well's employees who worked on the well-site are Louisiana residents. Moreover, Cajun Well installed and maintained the blowout preventer that failed in this incident. Furthermore, litigation arising out of this incident is already pending in Louisiana state court, and eleven of the Alcee plaintiffs are also plaintiffs in that consolidated case.

### B.  *Adequate Alternate Forum*

The first two factors under section 71.051 are whether (1) an alternate forum exists where the claim may be tried and (2) the alternate forum provides an adequate remedy.  TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(1)–(2).  An alternate forum is one in which the defendant is amenable to process.  *In re ENSCO*, 311 S.W.3d at 924; *In re Gen. Elec.*, 271 S.W.3d at 688.  An alternate forum is inadequate if the remedies that it offers are so unsatisfactory that they really comprise no remedy at all.  *In re ENSCO*, 311 S.W.3d at 924; *In re Gen. Elec.*, 271 S.W.3d at 688.  Comparative analysis of procedures in different forums is generally not appropriate in a forum non conveniens analysis because comparison of the rights, remedies, and procedures available in each forum requires complex exercises in comparative law that the forum non conveniens doctrine is "designed to help courts avoid."  *In re ENSCO*, 311 S.W.3d at 924–25 (quoting *In re Gen. Elec.*, 271 S.W.3d at 688).  Thus, comparative analyses are relevant to the forum non conveniens decision "only if a potential transfer would effectively result in no available remedy at all."  *Id.* at 925; *In re Gen. Elec.*, 271 S.W.3d at 688; *see also In re Pirelli Tire*, 247 S.W.3d at 678 ("That the substantive law of an alternative forum may be less favorable to the plaintiff is entitled to little, if any, weight.").

The Alcee plaintiffs do not contest that Mantle Oil is amenable to process in Louisiana and that, therefore, Louisiana is an alternate forum to Texas. The Alcee plaintiffs do, however, contend that Louisiana is not an *adequate* forum because (1) their claims could be barred by limitations in Louisiana; (2) they seek damages for "medical monitoring," which are not sought by the Louisiana-suit plaintiffs in their suit currently pending in Louisiana; and (3) they seek punitive damages that are unavailable in Louisiana under the circumstances here.

### 1. *Limitations*

The Alcee plaintiffs argue that claims for personal injuries and property damage are, in Louisiana, "subject to a liberative prescription [statute of limitations] of one year," and, thus, their claims could be time-barred if the trial court dismissed this case and they tried to file their claims in Louisiana. *See* LA. CIV. CODE ANN. art. 3492. As a result, they argue that they have no remedy at all in Louisiana, and, therefore, under the facts of this case, Louisiana is not an adequate alternate forum. *See Tullis*, 45 S.W.3d at 131 ("[I]t is undisputed that Tullis has no remedy at all in Tennessee because her claim would be barred in that state by the Tennessee one-year statute of limitations.").

Mantle Oil, however, contends that, under Louisiana law, the Alcee plaintiffs' timely filing of a class action in the Galveston County suit "suspended" the limitations period and that Louisiana law also provides that the suspended

12

limitations period resumes running thirty days after notice that the class action has been dismissed. As a result, if this case is dismissed on forum non conveniens grounds, the limitations period would remain tolled for thirty days, which would allow the Alcee plaintiffs time to file suit in Louisiana. We agree with Mantle Oil.

Louisiana Civil Code article 3462 generally provides that "[p]rescription is interrupted when the [plaintiff] commences action against the [defendant] . . . in a court of competent jurisdiction and venue." LA. CIV. CODE ANN. art. 3462; *see generally Taranto v. La. Citizens Prop. Ins. Corp.*, 62 So. 3d 721 (La. 2011). Louisiana Code of Civil Procedure article 596 provides, in the class action context, that:

> A. Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:
>
> . . . .
>
> (3) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed . . . .
>
> B. The time periods in Subparagraphs (A)(2) and (3) of this Article commence upon the expiration of the delay for taking an appeal if there is no appeal, or when an appeal becomes final and definitive.

LA. CODE CIV. P. art. 596.

Here, Alcee filed her original petition in the Galveston County suit on August 11, 2011, exactly one year after the blowout occurred, and, therefore, she filed suit within the Louisiana limitations period. The next day, Alcee amended her petition to add twenty-two other Assumption Parish residents as plaintiffs and to seek class certification. Thus, the Galveston County suit, a putative class action, which was timely filed in a court of competent jurisdiction and venue, suspended the running of the applicable Louisiana statute of limitations. *See* LA. CIV. CODE ANN. art. 3462; LA. CODE CIV. P. art. 596. Under article 596, the limitations period remains suspended while the class action is pending in the Texas courts and will resume running thirty days after the mailing or other delivery of a notice that the Galveston County suit has been dismissed. LA. CODE CIV. P. art. 596. Therefore, if this case is dismissed on forum non conveniens grounds, the Alcee plaintiffs essentially have a thirty-day grace period in which to file their claims in Louisiana before the statute of limitations resumes running. The Alcee plaintiffs' claims are thus not necessarily barred by the statute of limitations in Louisiana.

However, even if the Alcee plaintiffs' claims are time-barred under Louisiana law, the trial court has the power to

> set terms and conditions for staying or dismissing a claim or action under [section 71.051] as the interests of justice may require, giving due regard to the rights of the parties to the claim or action. If a moving party violates a term or condition of a stay or dismissal, the court shall withdraw the order staying or dismissing the claim or action and proceed as if the order had never been issued.

14

TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(c) (Vernon 2008). One of the conditions that the trial court may permissibly impose is that, if the court dismisses the claims on forum non conveniens grounds, Mantle Oil must refrain from asserting any limitations defense when the Alcee plaintiffs file suit in Louisiana. *See Adams v. Baxter Healthcare Corp.*, 998 S.W.2d 349, 354 (Tex. App.—Austin 1999, no pet.) (construing prior version of section 71.051); *see also Banks v. N.Y. Life Ins. Co.*, 737 So. 2d 1275, 1283 (La. 1999) (classifying prescription as affirmative defense). Mantle Oil has expressly agreed that, as a condition of dismissal on forum non conveniens grounds, if the Alcee plaintiffs' claims are time-barred under Louisiana law, it will not assert a prescription defense upon filing.

Therefore, we conclude that, under the facts of this case, limitations is not a basis for holding that Louisiana is not an adequate alternate forum.

### 2. *Medical Monitoring and Punitive Damages*

The Alcee plaintiffs also contend that Louisiana is not an adequate alternate forum because (1) they seek damages for medical monitoring in the Galveston County suit, the Louisiana-suit plaintiffs do not seek such damages in their currently-pending action, and Mantle Oil failed to establish that Louisiana law "expressly afford[s] litigants" a claim to such damages; and (2) they also seek punitive damages, which are only available under Louisiana law in specific

situations not applicable here. Mantle Oil argues that, even if medical monitoring and punitive damages are not available in these circumstances under Louisiana law, "Louisiana law unquestionably provides *substantially similar* remedies for the *vast majority* of Plaintiffs' claims," and the Alcee plaintiffs' argument that Louisiana law "afford[s] them no remedy at all" is not meritorious. We agree with Mantle Oil.

We assume the Alcee plaintiffs are correct that Louisiana law allows for the recovery of punitive damages only in limited circumstances not applicable here. *See Arabie v. CITGO Petroleum Corp.*, 89 So. 3d 307, 317 (La. 2012) ("In light of the State's general policy against punitive damages . . . ."); *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002) ("In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute."). There is, however, no indication that "medical monitoring" damages are similarly unavailable under Louisiana law.[3] *See Bourgeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1259 (La. 2001) ("In *Bourgeois I*, this court recognized the existence of a cause of action for medical monitoring under Louisiana law and set forth the criteria plaintiffs must satisfy to recover medical monitoring damages."); *Scott v. Am. Tobacco Co.*, 949 So. 2d 1266, 1282 (La. Ct. App. 2007) ("The [Louisiana]

---

[3]     Indeed, in their amended petition, the Alcee plaintiffs specifically request "[m]edical monitoring as allowed by the laws of the state of Louisiana."

16

Supreme Court recognized that the reasonable cost of medical monitoring is a compensable item of damage under La. Civ. Code art. 2315.").

Furthermore, it is undisputed that compensatory damages are available under Louisiana law for the Alcee plaintiffs' personal injury and property damage claims, and, therefore, if the Alcee plaintiffs successfully establish Mantle Oil's liability, they will be entitled to damages. The inability to recover *all* of the requested damages in a particular forum does not render that forum inadequate. *See Berg v. AMF Inc.*, 29 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding that Canada is adequate alternate forum even though Canada does not recognize strict liability cause of action, has monetary limits on non-economic damages, and limits recovery of punitive damages); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247, 102 S. Ct. 252, 261 (1981) (holding, in common-law forum non conveniens context, that fact that alternate forum does not recognize one of several asserted causes of action and limits recovery for other asserted causes of action should not be given "substantial weight" in analysis). Thus, because Louisiana law would allow the Alcee plaintiffs some recovery for their injuries, we conclude that Louisiana is an adequate alternate forum. *See Berg*, 29 S.W.3d at 217 ("Therefore, because Canadian law would allow the Bergs some recovery for injuries they may have sustained, we hold the appellees have

17

demonstrated by a preponderance of the evidence that the Bergs have an adequate remedy under Canadian law.").

We therefore hold that this factor weighs in favor of dismissal on forum non conveniens grounds.

### C. Substantial Injustice to Defendant by Litigating in Texas

The third factor is whether litigating in Texas will result in a substantial injustice to the defendant. TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(3). When examining this factor, the trial court considers, among other things, the location of relevant documents and evidence and whether a majority of witnesses may be reached by compulsory process in Texas, which are also considerations under the fifth factor—the balance of private interest factors. *In re ENSCO*, 311 S.W.3d at 925; *In re BPZ Res., Inc.*, 359 S.W.3d 866, 875 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) ("The lack of compulsory process in Texas for reaching the great majority of witnesses would be substantially unjust."); *Vinson v. Am. Bureau of Shipping*, 318 S.W.3d 34, 52 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("[T]he record does not demonstrate that appellees would suffer substantial injustice as a result of the trial of Vinson's claims in Texas. Critical witnesses and documents are located in Texas, even if some witnesses are in Singapore.").

The Alcee plaintiffs argue that because Mantle Oil is a Texas limited liability company with its headquarters in Friendswood and it made "decisions about the operation of the Well" from this office, it cannot establish that litigating this claim in Texas would result in a substantial injustice. Mantle Oil points out that, although the Alcee plaintiffs seek slightly different damages than the Louisiana-suit plaintiffs, the two lawsuits are virtually identical in terms of Mantle Oil's conduct that is at issue; eleven of the Alcee plaintiffs are also Louisiana-suit plaintiffs; and allowing the maintenance of two lawsuits against Mantle Oil concerning the same conduct in two different jurisdictions raises the risk of potential inconsistent judgments against it.

Mantle Oil also argues that the majority of witnesses relating to the blowout of the Well and the ensuing alleged damages are Louisiana residents and thus are beyond the compulsory subpoena power of the trial court. *See* TEX. R. CIV. P. 176.3(a) ("A person may not be required by subpoena to appear or produce documents or other things in a county that is more than 150 miles from where the person resides or is served."). The Texas Supreme Court has previously held that "the lack of compulsory process in Texas for reaching the great majority of witnesses would be substantially unjust." *In re ENSCO*, 311 S.W.3d at 925; *In re Gen. Elec.*, 271 S.W.3d at 689 ("While some travel in this case will almost certainly occur regardless of the forum in which the case is ultimately litigated,

19

that aspect does not override the fact that the evidence and witnesses relevant to the issue of Richards's asbestos exposure and his damages are outside the subpoena power of Texas courts."). Mantle Oil is not required to identify specific witnesses or evidence that it is unable to obtain through the court's subpoena power. *In re Gen. Elec.*, 271 S.W.3d at 689–90.

The Alcee plaintiffs point out that some witnesses—such as Mantle Oil's employees, employees of some of the cleaning companies hired by Mantle Oil after the blowout,[4] and the Alcee plaintiffs' Houston doctors, who have yet to be hired and have yet to treat the Alcee plaintiffs—are Texas residents and are subject to the trial court's subpoena power. They also argue that some documents—such as Mantle Oil's documents relating to the design and operation of the Well—are located in Texas. However, Mantle Oil identified companies and agencies whose

---

[4] The Alcee plaintiffs argue that the fact that Mantle Oil hired Texas companies for the cleanup and plugging operations—and their employees are Texas residents— weighs in favor of maintaining this suit in Texas because these fact witnesses are subject to the trial court's subpoena power. There is no connection, however, between these companies and the factual allegations in the Alcee plaintiffs' petition. Mantle Oil contracted with these companies after the blowout occurred, and their employees' participation in this incident was limited to plugging the Well and cleaning up the property. There is no evidence that these employees, for example, engaged in an investigation into the cause of blowout, in which case they would have information relevant to the plaintiffs' allegations. Although the parties have not formally designated their experts for trial, Mantle Oil has represented that employees from TGE Resources, Inc. ("TGE"), a Texas company hired by Mantle Oil to engage in clean-up operations after the blowout, will provide expert testimony on Mantle Oil's behalf. Mantle Oil has agreed that, if this case is dismissed, it will produce the TGE witnesses for any pre-trial matters and will ensure that these witnesses appear for trial in Louisiana.

employees would have relevant information about the blowout that are based in Louisiana. The record does not reflect that the parties have engaged in extensive discovery regarding the merits of the case, but under Mantle Oil's current theory of the case, the blowout occurred when the blowout preventer, installed by Cajun Well, failed. Cajun Well, which was completing its work on the Well at the time of the blowout, is a Louisiana company and its employees are Louisiana residents. Mantle Oil ultimately hired several Texas companies to assist in cleaning up the Well and the surrounding land and in drilling a relief well, but it also hired several Louisiana companies. The Louisiana Department of Environmental Quality and the Louisiana Department of Natural Resources conducted air and water sampling of the surrounding areas and oversaw cleanup of the area, which is relevant to the plaintiffs' nuisance and trespass claims and to the plaintiffs' damages. *See In re Gen. Elec.*, 271 S.W.3d at 691–92 ("Reasonable access to witnesses and evidence is a fundamental need in regard to any trial . . . ."). Employees of all of these companies and agencies have information relevant to the Alcee plaintiffs' claims, and none of them are subject to the Texas trial court's compulsory subpoena power. *Cf. Vinson*, 318 S.W.3d at 47 (noting, in case involving collapse of derrick located in Singapore, that person who was "most knowledgeable on the relevant matters" and other witnesses with "the most relevant" information resided in

Houston and holding that trial court abused its discretion in dismissing case for forum non conveniens in favor of Singapore).

Mantle Oil acknowledges that one potential fact witness, Tee Portas, the rig supervisor who was onsite at the time of the blowout, works for Hamilton Engineering, a Texas company. Although Portas works for a Texas company, Dwight C. Barden, Mantle Oil's managing member, testified in his deposition that Portas resides in Mississippi. As a result, he is beyond the subpoena power of both the Texas and Louisiana trial courts. Mantle Oil has agreed that, as a condition of dismissal, it will ensure that Portas is available for pre-trial discovery matters and that he will attend trial, if necessary.

In addition to the fact that Mantle Oil is already defending substantively identical claims in Louisiana state court, significant witnesses and documentary evidence are located in Louisiana and are beyond the compulsory subpoena power of the Texas trial court. We therefore conclude that this factor weighs in favor of dismissal.

### D.    *Jurisdiction Over All Defendants*

The fourth factor is whether the alternate forum can exercise jurisdiction over all the defendants. TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(4); *In re ENSCO*, 311 S.W.3d at 925. Mantle Oil is the only defendant in this suit, and it points out that it is already a party to the Louisiana suit arising out of this same

22

incident. It therefore acknowledges that Louisiana has personal jurisdiction over it. This factor, therefore, weighs in favor of dismissal.

### E.      *Public and Private Interest Factors*

The fifth factor requires the balancing of the public interests of the State and the private interests of the parties, and the court shall consider the extent to which the injury resulted from acts or omissions that occurred in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(5); *In re ENSCO*, 311 S.W.3d at 926; *In re BPZ Res.*, 359 S.W.3d at 876.

### 1.      *Public Interest Factors*

Generally, the public interest factors to be considered are the administrative difficulties related to court congestion; burdening the people of a community with jury duty when they have no relation to the litigation; the local interest in having localized controversies decided at home; and trying a case in the forum that is at home with the law that governs the case. *In re Gen. Elec.*, 271 S.W.3d at 691; *In re Pirelli Tire*, 247 S.W.3d at 679 ("Mexico's interest in protecting its citizens and seeing that they are compensated for their injuries is paramount. The safety of Mexican highways and products within the country's borders are also Mexican interests. On the other hand, it is unfair to impose upon the citizens of Cameron County the cost and administrative burden of a complex products-liability suit with no significant connection to Texas.").

23

The Alcee plaintiffs contend that, because Mantle Oil is a Texas limited liability company and made decisions regarding the operation of the Well from its Texas headquarters, Texas courts and juries have a "significant interest in how [it] operates as a business." Essentially, the Alcee plaintiffs claim that Mantle Oil negligently operated the Well from its Texas headquarters which caused the blowout, and, therefore, because acts in Texas caused their damages, Texas has a "local interest" in adjudicating this dispute, and a Texas jury will not be burdened by deciding a case with no connection to Texas. The Alcee plaintiffs also contend that both Texas and Louisiana law apply to this case.[5]

This case involves a Texas limited liability company based in Friendswood, Texas, and the Alcee plaintiffs allege that Mantle Oil committed, in Texas, negligent acts in operating the Well, leading to the blowout. Thus, we assume, without deciding, that this litigation does have at least some relation to the citizens of Galveston County. *See In re BPZ Res.*, 359 S.W.3d at 878 ("This litigation involves two corporate defendants based in Houston, Texas, and the real parties

---

[5] The Alcee plaintiffs argue that they brought this suit under the theory of dépeçage, which is the principle of applying the laws of different states to discrete issues within the same case, but they do not offer an explanation of which discrete parts of the case will be governed by which state's laws. Despite stating that the case is governed by both Texas and Louisiana law, in their amended petition, the Alcee plaintiffs refer solely to the substantive law of Louisiana. For example, they state, "At all times herein, under Louisiana Civil Code Article 2317, Mantle was under a continuing duty to protect Plaintiffs from the harm occasioned by things within its custody . . . ." They also alleged that "by allowing oil, gas, diesel-hydrocarbons and other toxic substances" to invade their real property, Mantle Oil committed "the torts of nuisance and trespass under Louisiana Civil Code Article 2315."

24

allege that the relators committed wrongful acts [in making operational decisions concerning an oil platform stationed off the coast of Peru] in Houston. Therefore, this litigation has some relation to the people of Harris County."). However, Mantle Oil contends that the proximate cause of the Alcee plaintiffs' alleged injuries is the blowout preventer that apparently failed and that was installed by Cajun Well, a Louisiana contractor.

Furthermore, as Mantle Oil points out, it is undisputed that the Alcee plaintiffs are Louisiana residents, that the blowout occurred in Louisiana, and that any alleged personal injuries and property damage occurred in Louisiana. Louisiana has a substantial interest in making sure that its citizens and their property are not harmed by oil and gas operations within its borders. *See In re Gen. Elec.*, 271 S.W.3d at 691 ("Maine undoubtedly has an interest in ensuring that its citizens are not exposed to hazardous materials in the workplace."). This case's connection to Louisiana is far more substantial than its connection to Galveston County. *See In re BPZ Res.*, 359 S.W.3d at 878 ("[T]he occurrence giving rise to the real parties' claims has a more substantial connection with Peru than it does Texas.").

Additionally, as their amended petition reflects, the Alcee plaintiffs appear to argue that Louisiana law should apply to determine both liability and compensatory damages. A plaintiff's home jurisdiction generally has a strong

25

interest in seeing its compensatory damages law applied to the dispute. *See id.* (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000)).

Assuming that Texas has an interest in this case due to Mantle Oil's status as a Texas limited liability company, Louisiana has a stronger interest in adjudicating disputes arising out of the blowout of the Well. *Cf. Vinson*, 318 S.W.3d at 52 (noting, in holding that trial court erroneously dismissed case for forum non conveniens, that "Vinson's employer is headquartered in Texas, Vinson received medical treatment in Texas, Vinson's employer conducted and supervised the DDI building program from Texas, the investigation of the derrick collapse was conduct by DNV Houston, and many of the critical witnesses and documents are located in Texas"). The balance of the public interest factors, therefore, weighs in favor of dismissal.

### 2. *Private Interest Factors*

The private interest factors are generally considered to be the ease of access to proof, the availability and cost of compulsory process, the possibility of viewing the premises, if appropriate, and other practical problems that make trial easy, expeditious, and inexpensive. *In re Gen. Elec.*, 271 S.W.3d at 691. The fact that the trial court has jurisdiction over the defendant because its office is in Texas is "a separate issue from whether the case should be dismissed on forum non conveniens grounds." *In re ENSCO*, 311 S.W.3d at 927.

The Alcee plaintiffs argue that the "key fact witnesses and sources of proof" are located in Texas, not Louisiana. Specifically, all of Mantle Oil's employees work in its Friendswood headquarters, it does not have a Louisiana office, and all of its decisions concerning the Well, including the initial design, allegedly were made at its Texas office. Documents allegedly demonstrating Mantle Oil's negligence are located in Texas, and contractors sent daily reports concerning the completion of the Well to its Texas headquarters. Thus, some evidence of Mantle Oil's "liability and responsibility" is located in Texas. The Alcee plaintiffs also argue that "other potential fact witnesses," such as employees for four companies that undertook plugging and cleanup operations, "mostly reside in Texas."[6] Furthermore, the Alcee plaintiffs argue that "they will be seeking premiere medical treatment in the Houston area as a result of their exposure to the harmful chemicals released by the blowout of Mantle's well," and, thus, once they begin treatment, their physicians and any documents and evidence related to their treatment will be located in Texas.

As Mantle Oil points out, the Alcee plaintiffs overlook "key witnesses" and evidence relevant to this case that are *not* located in Texas, such as the employees

---

[6]     The Alcee plaintiffs also point out that the majority of the working interest owners in the Well reside in Texas. However, there is no indication that the working interest owners played any role in operating the Well or in any decisions that may have led to the blowout, and, therefore, the working interest owners are irrelevant to this dispute.

of Cajun Well who were working on completing the Well at the time of the blowout and employees of the Louisiana Department of Environmental Quality and Louisiana Department of Natural Resources who were involved in obtaining air and water quality samples after the blowout, which is relevant evidence for the Alcee plaintiffs' nuisance and trespass claims. These witnesses cannot be reached under the trial court's subpoena power. *See* TEX. R. CIV. P. 176.3; *In re ENSCO*, 311 S.W.3d at 926 ("Even if some witnesses are located in the United States, the fact remains that compulsory process is unavailable for the vast majority of witnesses."); *In re Gen. Elec.*, 271 S.W.3d at 691–92 ("Reasonable access to witnesses and evidence is a fundamental need in regard to any trial . . . ."); *In re BPZ Res.,* 359 S.W.3d at 879 ("Unwilling witnesses in Peru cannot be compelled to testify in a Texas action."). Furthermore, relevant physical evidence, such as the Well itself and any components of the Well, in addition to soil and water samples taken after the blowout, is located in Louisiana, not Texas. *See In re ENSCO*, 311 S.W.3d at 926 (considering fact that physical evidence was in storage in Singapore when balancing private interest factors).

We also must consider the extent to which the Alcee plaintiffs' injuries resulted from acts or omissions that occurred in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(5); *In re ENSCO*, 311 S.W.3d at 926. The record in the underlying proceeding is not well developed concerning the parties' factual

28

allegations regarding how the blowout occurred, particularly with respect to the Alcee plaintiffs' theories of causation. The Alcee plaintiffs assume that because Mantle Oil was the Well operator and made "big decisions" concerning operation of the Well at its Texas headquarters, "their injuries were undoubtedly caused by Mantle's acts and omissions that occurred in Texas." Aside from this general contention, however, they point to no specific negligent act or omission on the part of Mantle Oil that occurred in Texas.

The mandamus record includes the deposition testimony of Barden, Mantle Oil's managing member, who testified that, although "big decisions" concerning the Well were made at Mantle Oil's Texas office, "[a] lot of the smaller ones [were] not."[7] When asked who he believed had "intimate knowledge" about what caused the blowout, Barden named Cajun Well, because it had the "drilling/completion rig on location" and "it was their rig and blowout preventers that were on the well." He further testified that Cajun Well was the "completion contractor" at the time the blowout occurred, and it supplied the blowout preventer. He testified that no Mantle Oil employees were on site during completion operations, generally, or at the time of the blowout, specifically. At this stage of

---

[7] When asked to clarify what constituted "big decisions," Barden answered: "Are we going to invest in the well? The drilling contractor. We pick the drilling contractors. We—we pick the logging contractors. Between the drilling and the logging, you know, I mean, we take care of the pipe, cementing. But then, once you get past those major deals, a lot of the smaller services can be picked by—by a number of people."

29

the proceedings, Mantle Oil alleges that the blowout preventer installed by Cajun Well failed, causing the blowout, and, thus, any actions on its part regarding the operation of the Well were not a proximate cause of the blowout. *See In re BPZ*, 359 S.W.3d at 880 ("[T]hese alleged acts and omissions in Texas would be a more remote cause of the real parties' injuries than the alleged acts or omissions in Peru of Paolillo, the crew of the Supe, and BPZ Peru.").

We conclude that consideration of both the public and private interest factors weighs in favor of dismissal of the case on forum non conveniens grounds.

### F.    *Unreasonable Duplication of Litigation*

The final factor that the trial court must consider is whether the dismissal would result in unreasonable duplication or proliferation of litigation. TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(6). The Alcee plaintiffs argue that the Louisiana suit, which was initially filed as a class action under Louisiana law, was converted into an individual action, whereas the Galveston County suit is a class action; that at least eleven of the Alcee plaintiffs do not have a claim pending in the Louisiana suit; and that "[i]ndividual lawsuits filed in Louisiana would result in proliferation of litigation and transferring this case wholesale would simply be a case of shifting litigation from one forum to another."

As we have already noted, four actions filed in Louisiana state court against Mantle Oil have been consolidated and are currently pending, and eleven of the

30

Alcee plaintiffs currently have claims pending in the consolidated Louisiana action. If this case is dismissed, the Alcee plaintiffs who are not already Louisiana-suit plaintiffs would have the opportunity to seek to join the pending Louisiana suit as additional plaintiffs, or they could file suit in Louisiana and seek consolidation with the Louisiana suit. If anything, dismissal of this case will *reduce* the amount of litigation pending concerning the blowout, and it is logical for the Louisiana state court, which is already handling claims from this incident and will be familiar with both the facts and the relevant Louisiana law, to adjudicate these claims as well. *See In re ENSCO*, 311 S.W.3d at 928 ("And as ENSCO points out, if this case is dismissed, it may result in consolidation of this claim with other claims already filed in Australia, thus reducing the amount of litigation. This last factor also weighs in ENSCO's favor."); *see also Piper Aircraft*, 454 U.S. at 259, 102 S. Ct. at 268 (noting that it "would be far more convenient, however, to resolve all claims in one trial"). We therefore conclude that this factor weighs in favor of dismissal.

When we consider all of the section 71.051(b) factors, we conclude that the factors weigh in favor of dismissing this case on forum non conveniens grounds. We therefore hold that the trial court erroneously denied Mantle Oil's motion to dismiss.

We sustain Mantle Oil's sole issue.

## Conclusion

We conditionally grant Mantle Oil's petition for writ of mandamus. We direct the trial court to grant Mantle Oil's motion to dismiss for forum non conveniens, conditioned on (1) Mantle Oil's refraining from asserting any statute of limitations defenses against the Alcee plaintiffs upon the filing of their claims in Louisiana state court, (2) Mantle Oil's producing its employees as witnesses in a Louisiana suit, and (3) Mantle Oil's ensuring that Tee Portas and TGE employees will be available in a Louisiana suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(c) ("The court may set terms and conditions for staying or dismissing a claim or action under this section as the interests of justice may require . . . ."). The writ will issue only if the trial court fails to do so.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.