**HOUSTON HELICOPTERS, INC.**

v.

**CANADIAN HELICOPTERS LIMITED.**

**Civ. A. No. G–94–818.**

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 16, 1995.

Jeffrey D. Roberts, Roberts Markel Folger & Powers, Houston, TX, for Houston Helicopters, Inc.

Linda L. Addison, Fulbright & Jaworski, Houston, TX, for Canadian Helicopters Limited.

## ORDER

KENT, District Judge.

Pending before the Court is the Motion of Defendant Canadian Helicopters Limited (CHL) to Dismiss for Lack of Personal Jurisdiction and on Grounds of *Forum Non Conveniens.* Also before the Court is the Motion of Plaintiff Houston Helicopters, Inc. (HHI) for Interlocutory Summary Judgment, and CHL's Motion to Extend Date to File Responses to Dispositive Motions. For the reasons set forth below, CHL's Motion to Extend Date to File Responses is hereby **GRANTED,** and CHL's Motion to Dismiss and HHI's Motion for Summary Judgment are hereby **DENIED.**

## I. BACKGROUND

CHL is a Canadian corporation with its headquarters located in St. John's, Newfoundland, Canada. CHL has never had an office in Texas and has never been licensed to do business in Texas. HHI is a Texas corporation located in Pearland, Texas. In March 1994, CHL and HHI entered into four lease agreements through which CHL leased helicopters from HHI for a period of fifteen months, at which time CHL was to return the helicopters to Houston. The leases designated the laws of Ontario as governing, and provided that CHL could enforce the leases in the courts of Newfoundland. The leases were executed by fax, with CHL signing the leases at its headquarters in Newfoundland, and HHI signing at its offices in Texas. The final leases were exchanged through the mail or by courier.

CHL sent Mark Valpy to Pearland to inspect the helicopters and HHI's maintenance records, who remained in the Pearland/Houston area for approximately four weeks. After the leases were executed, the helicopters were deleted from the FAA's United States registry and were registered in Canada. While the leases stated that CHL took delivery of the helicopters in Houston, two of the helicopters were flown by HHI pilots from Texas to Monterrey, Mexico, where they were disassembled and shipped to Africa. The two remaining helicopters were flown by HHI pilots from Texas to Vancouver, where they were likewise disassembled and shipped to Africa. In Africa, CHL used the helicopters to transport persons and goods pursuant to a contract between CHL and the United Nations. HHI mailed invoices to CHL in Canada, and CHL apparently mailed the payments due under the leases to HHI in Texas.

At approximately the same time as the execution of the leases, CHL retained HHI to paint two helicopters leased by CHL from third parties. These helicopters were also used by CHL in connection with its United Nations contract.

In addition to the transactions with HHI, CHL has had other business dealings in Texas. In January 1993, CHL entered into a two year agreement with American Eurocopter Corporation (AEC), a Delaware corporation with its principal place of business in Grand Prairie, Texas. Under the contract, CHL agreed to operate as a service facility in Canada performing maintenance on AEC helicopters. The AEC contract provided that it was to be governed by the laws of Texas.

In January 1994, Canadian Helicopters Limited, Western Division (CHL West) entered into a one year service facility agreement with Bell Helicopter Textron, Inc., through which CHL West became an authorized Bell service provider and agreed to perform maintenance and repairs to Bell helicopters in Canada. The contract required CHL West to purchase parts and special tools from Bell's Customer Service Facility in Fort Worth, Texas. Under the contract, management of the contractual relationship was handled by the Customer Service Center in Fort Worth.

Various other entities related to CHL have also engaged in business transactions connected to Texas. In 1990, Canadian Helicopters Corporation (CHC) entered into a support and maintenance agreement with Turbomeca Engine Corporation (TEC), a Texas corporation located in Grand Prairie. The TEC contract provided that it was governed by Texas law and that any action related to the contract must be brought in Tarrant County, Texas. CHC is a holding corporation and is the parent company of CHL.

█ In August 1994, Canadian Helicopters International (CHI) entered into an agreement with UMC Equatorial Guinea Corpora-

tion (UMC), a Delaware corporation with offices in Houston, through which CHI agreed to provide helicopters and pilots to transport UMC equipment and personnel in Equatorial Guinea. Under the contract, the parties designated the laws of Texas as governing, and agreed to resolve any disputes related to the contract in Houston. CHI is another subsidiary of CHC, and is a division of CHL.[1]

Several months after the executions of the leases, a dispute arose between CHL and HHI over the condition of the helicopters. CHL contended the helicopters had substantial latent defects and were not airworthy, forcing CHL to make substantial repairs to the helicopters. Attempts to resolve the dispute failed, and CHL withheld lease payments after August 1994 as a result of the defects and repairs.

HHI brought this action for breach of contract, unjust enrichment, and quantum meruit, seeking $800,000 plus interest for unpaid lease payments, as well as the cost of restoring the helicopters to the condition they were in when leased to CHL. CHL answered, denying it breached the lease agreements and claiming that if it did breach the lease agreements, the breach was justified. CHL also counterclaimed, contending HHI made material misrepresentations about the condition of the helicopters, and that HHI breached the lease agreements by providing helicopters that were not airworthy. CHL seeks recovery of approximately $700,000, the value of the repairs and "betterment" to the helicopters. The helicopters have been returned to HHI, and are presently sitting idle at the Houston airport.

## II. PERSONAL JURISDICTION

█ CHL contends this action must be dismissed because the Court lacks personal jurisdiction over it. In Federal Court, personal jurisdiction over a non-resident defendant is proper if: (1) the defendant is amenable to service of process under the forum

1. CHL contends HHI has not properly authenticated the contracts discussed above, and objects to any consideration of the contracts. The contracts were provided to HHI by CHL in accordance with this Court's discovery Order dated March 9, 1995. Therefore, for the limited purposes of the motions currently under consideration, the Court considers the contracts sufficiently authenticated.

state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a non-resident defendant if the defendant "does business" in Texas by contracting by mail or otherwise with a Texas resident, if the contract requires either party to perform the contract in whole or in part in Texas. Tex.Civ.Prac. & Rem.Code Ann. §§ 17.042–.044 (1986). Because the contracts between CHL and HHI called for partial performance in Texas,[2] CHL is subject to service of process in Texas. Therefore, the remaining question is whether the exercise of jurisdiction over CHL by this Court is constitutional.

■ Whether the exercise of personal jurisdiction over CHL is consistent with the Due Process Clause of the United States Constitution involves a two-pronged inquiry. First, the Court must conclude that CHL has "minimum contacts" with Texas. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must also conclude that requiring CHL to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993). When considering CHL's Motion to Dismiss, this Court must resolve any factual disputes in HHI's favor and treat any uncontroverted allegations in its Complaint as true. *Wilson*, 20 F.3d at 648. However, to invoke this Court's jurisdiction, HHI must present facts that establish at least a prima facie case that personal jurisdiction over CHL is proper. *Id.*

### A. Minimum Contacts

■ The minimum contacts aspect of due process is divided into two types of personal jurisdiction—specific and general. *Wilson*, 20 F.3d at 647. If the cause of action arises

from particular activities of the defendant in the forum, specific jurisdiction is generally involved. The minimum contacts analysis in cases of specific jurisdiction is narrow, focusing on the relationship between the defendant, the cause of action, and the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). If the cause of action is not based on the defendant's specific activities in the forum state, general jurisdiction is typically involved. In cases involving general jurisdiction, the minimum contacts analysis is more demanding, requiring activities of a substantial, continuous, and systematic nature. *Id.* at 417–19, 104 S.Ct. at 1873–75; *Wilson*, 20 F.3d at 647, 650–51. In the case at bar, the Court concludes that specific jurisdiction exists over CHL, and the Court therefore does not address the general jurisdiction question.

■ Specific personal jurisdiction exists over a non-resident defendant if the defendant has " 'purposefully directed' his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' the those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489 (5th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994). The critical inquiry, therefore, is whether the defendant, by directing activities to the forum state, purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *See, e.g., Holt Oil & Gas Co. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987). The defendant's connection with the forum state must be of such a nature that the defendant should reasonably anticipate being haled into court in the forum state. *Id.; see also Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir.1993). Moreover, it is the acts of the *defendant* that establish jurisdictional contact

---

**2.** The leases provided that CHL was to take delivery of the helicopters in Houston (although delivery apparently took place in Mexico and Cana-

da), and required CHL to return the helicopters to Houston.

with the forum state; unilateral actions in the forum state by the plaintiff are insufficient to support the exercise of personal jurisdiction. *Petty–Ray Geophysical,* 954 F.2d at 1068.

■■■■■ While the sufficiency of CHL's contacts is admittedly a close question, the Court concludes the contacts are sufficient to support the exercise of personal jurisdiction over CHL. Here, CHL sought out the services of HHI,[3] and purposefully entered into a contract with a Texas corporation that required CHL to perform a portion of its contractual obligations in Texas. In addition, CHL sent a representative to Texas to inspect HHI's maintenance records. The Court recognizes that this fact alone would likely be insufficient to establish personal jurisdiction. *See, e.g., Hydrokinetics,* 700 F.2d at 1029 (the fact that representatives of the defendant twice visited the forum state in connection with the contract in dispute did not change the conclusion that the court lacked personal jurisdiction over the defendant). However, Mr. Valpy's visit did last approximately four weeks. This month-long visit to Texas is substantial and highly relevant to an evaluation of CHL's contacts with Texas. Moreover, the fact that CHL made payments to HHI in Texas also strengthens CHL's contacts with the forum state. *See, e.g., Polythane Systems, Inc. v. Marina Ventures Int'l, Ltd.,* 993 F.2d 1201, 1206 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1064, 127 L.Ed.2d 383 (1994) (the fact that defendant mailed payments to plaintiff in the forum state is relevant to a minimum contacts analysis, and supports the exercise

of personal jurisdiction). Finally, CHL hired HHI to perform work on two helicopters CHL leased from third parties. These are purposeful actions on the part of CHL seeking to benefit from a business relationship in Texas with a Texas citizen. Thus, CHL clearly availed itself of the privilege of conducting business in Texas, and invoked the benefits and protections of Texas law. Given the nature of CHL's contacts with HHI and the forum state, CHL could reasonably anticipate being haled into Texas courts. Therefore, after considering all the relevant circumstances, this Court concludes that CHL has sufficient contacts with Texas to support the exercise of personal jurisdiction by the Court over CHL.[4]

## B. Fair Play and Substantial Justice

■■■ In addition to requiring minimum contacts with the forum state, due process requires that the exercise of personal jurisdiction over a non-resident defendant comply with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *Wilson,* 20 F.3d at 647. The relationship between the defendant and the forum state must be such that it is reasonable to require the corporation to defend the particular suit. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

■■■■ The burden on the defendant, while always a primary concern, must be considered in light of other relevant factors:

---

3. Neither party has provided the Court with information as to which party initiated the contacts or which party sought out the services of the other. Because CHL is the moving party, it bears the burden of proving lack of jurisdiction, and all inferences must be drawn in favor of HHI. Therefore, absent evidence to the contrary, this Court must presume, for the purposes of this motion, that CHL sought out the services of HHI.

4. In reaching this conclusion, the Court does not overlook the fact that the leases between CHL and HHI provide that the laws of Ontario will govern any dispute and that CHL may sue HHI in Newfoundland. While a contractual choice of law provision is relevant to a minimum contacts analysis, *see, e.g., Burger King,* 471 U.S. at 481–82, 105 S.Ct. at 2186–87; *Hydrokinetics, Inc. v.*

*Alaska Mechanical, Inc.,* 700 F.2d 1026 (5th Cir. 1983), the choice of law and choice of forum clauses in this case do not nullify CHL's contacts with the forum state, and do not compel a finding that this Court lacks jurisdiction over CHL. Moreover, because it is not certain that the choice of law clauses will be given effect in this case, their importance in the minimum contacts analysis is diminished. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (federal court sitting in diversity must apply the choice of law rules of the forum state); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 677–78 (Tex.1990) (contractual choice of law provision will not be given effect if the provision requires the application of the law of a jurisdiction that does not have a substantial relationship to the parties and the transaction).

(1) the forum state's interest in resolving the dispute; (2) the plaintiff's interest in obtaining convenient and effective relief; (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several States in furthering fundamental substantive social policies. *Id.* "It is incumbent upon the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Petty–Ray Geophysical,* 954 F.2d at 1068.

HHI is a Texas corporation; thus, Texas has a strong interest in adjudicating the dispute. While it will be a burden on CHL to defend the action in Texas, it would likewise be a burden on HHI to prosecute the action in Canada. Given that CHL and its related companies have in the past entered into contracts requiring that any dispute be resolved by Texas courts applying Texas law, this Court finds CHL's claims of undue hardship if required to defend in Texas less compelling. In addition, HHI's employees and maintenance and repair records for the leased helicopters are located in Texas. Because CHL contends the helicopters were not airworthy when leased by HHI, the maintenance records and testimony of HHI's employees will likely be very important during the trial of this case. Thus, the burden on CHL is counterbalanced by the fact that HHI will be able to obtain convenient and effective relief in its chosen forum, with easy access to much of the important evidence in the case. While recognizing Canada's legitimate interest in resolving a dispute involving one of her own corporate citizens, this Court believes that a trial in this forum, where the case has been pending for nearly one year and is set for trial in approximately four months, is the most efficient and fairest means of resolving this dispute. CHL has simply failed to persuade this Court that any consideration renders the exercise of jurisdiction unreasonable.

Therefore, after considering all the relevant circumstances, the Court concludes that the exercise of personal jurisdiction over CHL does not offend traditional notions of fair play and substantial justice. Accordingly, CHL's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED**.

## III. FORUM NON CONVENIENS

CHL also seeks dismissal of this action under the doctrine of *forum non conveniens.* The doctrine of *forum non conveniens* allows a court to decline to exercise its jurisdiction where it appears that, for the convenience of the parties and in the interests of justice, the action should be tried in another forum. The ultimate issue in a *forum non conveniens* analysis is where the case should be tried in order to best serve the convenience of the parties and the interests of justice. *Koster v. Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947); *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.,* 796 F.2d 821, 827 (5th Cir.1986). Determining what location is convenient requires a balancing of a number of private and public interest factors, none of which is dispositive. *Syndicate 420,* 796 F.2d at 827. The defendant bears the burden of convincing the Court that dismissal of the action is warranted.

The first step in a *forum non conveniens* analysis involves a determination of whether there exists an adequate and available foreign forum. A foreign forum is available when the entire case and all of the parties can come within the jurisdiction of that forum; the forum is adequate if the parties will be treated fairly and will not be deprived of all remedies. *Syndicate 420,* 796 F.2d at 828–30. Here, CHL contends the courts in Ontario or Newfoundland are available and appropriate forums. While CHL has offered no affidavits or other evidence supporting these assertions, HHI does not challenge the availability or adequacy of a Canadian forum. Accordingly, the Court will presume that an adequate and available forum for this dispute exists in Canada.

If an adequate forum is available, the Court must then balance the public and private factors outlined by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). "The

plaintiff's choice of forum is entitled to great weight in the balancing of factors, and unless the balance strongly favors the defendant[ ], the plaintiff's choice of forum should not be overturned." *Syndicate 420,* 796 F.2d at 830.

The private factors to be considered in a *forum non conveniens* analysis relate to the convenience of the parties, and include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained.

*Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. The public factors relevant to a *forum non conveniens* analysis include

> the administrative difficulties caused by crowded dockets, the burden of imposing jury duty on citizens of a forum with no relation to the dispute, the local interest in having localized controversies decided in that locality, and the appropriateness of deciding diversity cases in the forum whose law provides the substantive rules of decision.

*Villar v. Crowley Maritime Corp.,* 780 F.Supp. 1467, 1484 (S.D.Tex.1992), *aff'd,* 990 F.2d 1489 (5th Cir.1993), cert. denied, — U.S. ——, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994); *see also Syndicate 420,* 796 F.2d at 831.

Here, the private factors weigh in favor of retaining the action. The evidence and witnesses in this case will likely be scattered across the globe—in Texas, Canada, and Africa. Thus, a trial in any location will present certain difficulties in obtaining the attendance of witness, and necessarily will be burdensome and problematic to one of the parties. However, the doctrine of *forum non conveniens* should not be invoked simply to shift the inconvenience from one party to another.

The action pending before this Court ultimately reduces to two issues—HHI's claim that CHL did not make the required lease payments, and CHL's claim that HHI breached the lease agreements by providing helicopters that were not airworthy and had substantial latent defects. Much of the evidence relevant to both issues, including HHI's payment and maintenance records, will be in the hands of HHI and its employees. CHL, however, contends the evidence most relevant to HHI's claim is evidence showing that CHL was justified in withholding lease payments as a result of the repairs it was required to perform on the helicopters. Therefore, according to CHL, the key witnesses and documents are located in its offices in Newfoundland, Canada. While CHL contends it would be burdensome to secure the presence of Canadian witnesses if the trial was conducted in Texas, it has provided this Court with no evidence to support this allegation. Moreover, given that many of the Canadian witnesses will be employees of CHL, the Court is confident that CHL will be able to ensure their attendance at trial or otherwise present their testimony. In addition, the helicopters themselves are located in Houston, and a trial in Canada would not spare CHL the expense of sending its experts to Houston to examine the helicopters to determine their present condition.

It therefore appears that conducting the trial in the Southern District of Texas will give both parties relatively easy access to more evidence and witnesses than would a trial in Canada, and will minimize the expenses to the parties. Accordingly, the Court concludes that the private factors weigh in favor of maintaining the action in the Southern District of Texas, which will provide the most expeditious and inexpensive resolution of the case.

The public factors likewise weigh in favor of maintaining the case in the Southern District of Texas. While this Court's docket is extremely crowded, the case is scheduled for trial in January 1996; dismissing the case would result in a substantial delay of its resolution. More importantly, this case is brought by a Texas corporation headquartered in nearby Pearland. The State of Texas has a keen interest in the disposition of cases involving one of its own citizens, a point

completely overlooked by CHL. To the extent that the laws of Ontario may govern the dispute, this fact alone does not outweigh the other factors, which support keeping the case in the Southern District of Texas. The laws of Ontario should be substantially similar to the laws of the United States, and this Court is confident of its ability to properly apply whatever law is determined to be governing.

Therefore, after a careful consideration of both the public and private factors, the Court concludes that, in order to best serve the convenience of the parties and the interests of justice, HHI's action should not be dismissed. While trial in Texas will be somewhat burdensome to CHL, a trial in Canada would be equally burdensome to HHI, and would further no significant public or private interest. Accordingly, CHL's Motion to Dismiss on Grounds of *Forum Non Conveniens* is hereby **DENIED.**

### IV. PARTIAL SUMMARY JUDGMENT [5]

■ HHI requests that this Court render partial summary judgment in its favor on the issue of CHL's liability for past due lease payments. It is undisputed that CHL has made no lease payments since August 1994. The leases contained a clause whereby CHL "conclusively acknowledge[d] that it has caused a thorough inspection to be made of the [helicopters] and conclusively acknowledge[d] that the [helicopters are] in good order and repair and [are] fully operative and in airworthy condition." HHI contends that, as a result of these clauses, CHL's argument that HHI breached the leases by failing to provide airworthy helicopters fails as a matter of law, and that HHI therefore is entitled to summary judgment for the amount of the past due lease payments.

CHL, however, contends that HHI fraudulently induced it to enter into the lease agreements by misrepresenting or concealing the true condition of the helicopters. CHL argues that, as a result of HHI's fraud, the lease provision is unenforceable, and summary judgment is therefore inappropriate.

■ Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not be granted if the evidence indicates that a reasonable fact finder could find in favor of the non-moving party. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When ruling on a motion for summary judgment, this Court must accept the evidence of the non-moving party and draw all justifiable inferences in his favor. Determining credibility, weighing the evidence, and drawing reasonable inferences are left to the trier of fact. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

■ Here, because CHL contends HHI fraudulently misrepresented the condition of the helicopters, genuine issues of fact exist as to whether the conduct of HHI amounts to fraud, and whether the conduct of HHI relieved CHL of its obligation to make the payments due under the leases. *See Prudential Ins. Co. v. Jefferson,* 896 S.W.2d 156, 161 (Tex.1995) ("as is" clause in purchase contract not binding on purchaser induced to enter into the contract by a fraudulent representation or concealment of information); *Dallas Farm Machinery Co. v. Reaves,* 158 Tex. 1, 307 S.W.2d 233 (1957) (where plaintiff fraudulently induced defendant to enter into a contract, a clause in the contract disclaiming liability is invalid and cannot be invoked by the plaintiff); *Helmcamp v. Interfirst Bank Wichita Falls, N.A.,* 685 S.W.2d 794

---

5. Counsel for CHL inadvertently filed its response to this motion after the deadline established in the Court's docket control order, but within the time allowed under the Federal Rules of Civil Procedure. CHL has filed a Motion requesting that CHL not be punished for the inadvertence of its counsel, and that the Court accept its response as timely filed. While the Court views noncompliance with its orders with great displeasure, the Court concludes it would be inappropriate in this case to penalize CHL by refusing to consider its response, particularly when HHI has not objected to CHL's Motion. Accordingly, CHL's Motion to Extend Date to File Responses to Dispositive Motions is hereby **GRANTED**, and CHL's response to HHI's Motion for Interlocutory Summary Judgment is deemed timely filed.

(Tex.Civ.App.—Fort Worth 1985, writ ref'd n.r.e.) (summary judgment inappropriate in case where defendant raised fraudulent inducement as an affirmative defense to an action to collect on a promissory note). Accordingly, HHI's Motion for Interlocutory Summary Judgment is hereby **DENIED.**

**IT IS SO ORDERED.**