**Opinion issued May 9, 2019**



In The

# Court of Appeals

### For The

## First District of Texas

————————————

### NO. 01-18-00409-CV

————————————

## IN RE FRIEDE & GOLDMAN, LLC F/K/A FGL BUYER, LLC D/B/A FRIEDE & GOLDMAN, LTD., Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

### MEMORANDUM OPINION

Relator Friede & Goldman, LLC f/k/a FGL Buyer, LLC d/b/a Friede & Goldman, Ltd. ("FGL") petitions for a writ of mandamus directing the trial court to grant its motion to dismiss the underlying lawsuit[1] for *forum non conveniens*. American Bureau of Shipping ("ABS"); ABS Group of Companies, Inc.; ABS

---

[1] The underlying suit is *Robert Ulloa et al. v. Friede & Goldman, LLC, et al.*; cause number 2016-29340; pending in the 125th District Court of Harris County, Texas; Hon. Kyle Carter presiding.

Consulting Ltd.; and ABS Consulting, Inc. (collectively, the "ABS Entities"), also defendants below, joined in FGL's trial-court motion to dismiss and have joined FGL's petition before us. In a single issue, FGL and the ABS Entities argue that the trial court abused its discretion by denying their joint motion to dismiss because Texas is an inconvenient forum for the lawsuit. We deny the petition.

## Background

The vessel *Troll Solution*, a "jack-up rig," was working on an offshore oil well in Mexico's territorial waters in the Bay of Campeche when it listed and partially dipped beneath the water's surface. The incident allegedly resulted in one worker's death and in personal injuries to many others. At the time of the incident, the vessel was contracted to Mexico's national oil company.

Forty-four plaintiffs filed suit in Harris County district court based on the incident. Forty-one of the plaintiffs are workers who were aboard the *Troll Solution* during the incident. The remaining three plaintiffs are the deceased worker's estate's representative and his two children. Of the forty-one worker plaintiffs, one is a citizen and resident of Poland, another is a citizen and resident of India, and all the rest are citizens and residents of Mexico. The worker plaintiffs were working for Mexico-based employers at the time of the incident, and Mexico-based healthcare providers treated their injuries.

2

Plaintiffs sued FGL and the ABS Entities, who allegedly have principal places of business and headquarters in Houston. Plaintiffs alleged that the *Troll Solution* "was defectively designed, in that it was unreasonably dangerous when sold and marketed by Defendants . . . ."

The *Troll Solution* is the product of work performed around the globe. According to FGL's Vice President of Operations, a Chinese manufacturer had contracted with FGL's Dutch affiliate "to supply a license for a basic jack-up rig design for a jack-up rig that" the manufacturer "was building at its shipyard in Nantong, China." The Dutch affiliate subcontracted with FGL to supply the basic design. FGL's Vice President described the design process:

> Upon information and belief, the rig [that the Chinese manufacturer] ultimately built using, in part, the basic jack-up rig design supplied by [FGL's Dutch affiliate], is now known as the TROLL SOLUTION, the jack-up rig at issue in the Lawsuit.

> The basic jack-up rig design drawings provided by FGL to [its Dutch affiliate] and ultimately to [the manufacturer] were not, in and of themselves, sufficient to build a working, operating jack-up rig. Only after the detailed design phase could the jack-up rig be built and put into operation. FGL played no role in the detailed design phase for the jack-up rig at issue in the Lawsuit. Presumably, that work was carried out by [the manufacturer] at its shipyard in Nantong, China, or by other contractors hired by [the manufacturer].

> FGL prepared the basic jack-up rig design at its office in Houston.

Plaintiffs allege that FGL failed to properly design the *Troll Solution*, damaging them.

3

Plaintiffs also allege that the ABS Entities were "negligent in [their] inspection, review, and classification" of the *Troll Solution* before it entered into service. ABS's Chief Surveyor/Offshore averred that ABS was not involved with the operation or management of the *Troll Solution* from the date it began to be manufactured to the date of the incident. The evidentiary record reflects that the *Troll Solution*'s Shipmanager, Operator, and Technical Manager, as well as its Registered Owner, are entities with addresses in Germany. FGL disputes this. It argues that the Shipmanager/Operator entity and the Registered Owner entity are instead Mexican companies. ABS's Chief Surveyor/Offshore also averred that "ABS has attended surveys and prepared reports at intervals from the date of the commencement of the *Troll Solution*'s construction through the date of the incident," all of which were conducted outside of the US by non-US ABS affiliates or branch offices.

FGL and the ABS Entities jointly moved for dismissal of Plaintiffs' suit for *forum non conveniens*, arguing that the suit should be dismissed for refiling in a court in Mexico. The trial court denied the motion without explanation.

**Mandamus Proceedings Seeking Dismissal for *Forum Non Conveniens***

In their sole issue, FGL and the ABS Entities seek a writ of mandamus directing the trial court to dismiss the suit for *forum non conveniens*.

## I.    Standard of Review and Applicable Law

Mandamus is appropriate to remedy an improper denial of a motion to dismiss for *forum non conveniens*. *In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 923 (Tex. 2010) (orig. proceeding) (per curiam). We review a trial court's ruling on a motion to dismiss for *forum non conveniens* for an abuse of discretion. *Id.* A trial court has no discretion in determining what the law is or in applying the law to particular facts. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). Aside from determining or applying the law though, "a reviewing court cannot substitute its discretion for that of the trial court"; therefore, "to find an abuse when factual matters are in dispute, the reviewing court must conclude that the facts and circumstances of the case extinguish any choice in the matter." *In re Mahindra, USA Inc.*, 549 S.W.3d 541, 550 (Tex. 2018) (orig. proceeding).

In actions for a wrongful death or personal injury, when a party moves for a *forum non conveniens* dismissal, Texas courts are to apply the factors listed in Civil Practice & Remedies Code § 71.051(b). TEX. CIV. PRAC. & REM. CODE § 71.051(i). The "statute does not place the burden of proof on either party," so courts must resolve disputes under the statute's factors "based on the 'greater weight of the evidence.'" *Mahindra, USA*, 549 S.W.3d at 550 (quoting *ENSCO*

*Offshore Int'l*, 311 S.W.3d at 927); *accord In re Gen. Elec. Co.*, 271 S.W.3d 681, 687 (Tex. 2008) (orig. proceeding).

The statute "requires dismissal of the claim or action if the statutory factors weigh in favor of the claim or action being more properly heard in a forum outside Texas." *Gen. Elec.*, 271 S.W.3d at 686. "The statute does not mandate that a movant prove each factor or that each factor must weigh in favor of dismissal to require a motion to be granted." *Id.* at 687. "To the extent evidence is necessary to support the positions of the parties," courts must weigh the factors based "on the weight of the evidence" and are "entitled to take into account the presence or absence of evidence as to some issue or position of a party." *Id.*

When "all the factors do not conclusively favor the alternative forum[,] . . . we cannot say that the trial court abused its discretion in denying" a motion to dismiss for *forum non conveniens*. *Mahindra, USA*, 549 S.W.3d at 550.

A *forum non conveniens* analysis generally affords the plaintiff's choice of forum great deference, but that deference is "substantially less" when the plaintiff is a nonresident of the forum. *In re Mantle Oil & Gas, LLC*, 426 S.W.3d 182, 188 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). The doctrine "recognizes that the plaintiff's choice must sometimes yield in the public interest, and in the interest of fundamental fairness. Dismissal on forum non conveniens grounds is appropriate when . . . the case itself has no significant connection to the forum

state." *Id.* at 188–89 (internal quotation and citation omitted). "[I]t is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the State." *Id.* at 189. However, *forum non conveniens* decisions are subject to the trial court's discretion and will be set aside only for a clear abuse of discretion. *Mahindra, USA*, 549 S.W.3d at 545 (citing *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (per curiam)).

## II.    Balancing Section 71.051(b)'s factors

We proceed with determining whether the greater weight of the evidence requires us to overrule the trial court's exercise of its discretion.

### A.    An alternate forum—Mexico's courts—exists in which the action may be tried.

First, we must consider whether "an alternate forum exists in which the claim or action may be tried." TEX. CIV. PRAC. & REM. CODE § 71.051(b)(1). An alternate forum exists when the defendants are amenable to process in that forum. *ENSCO Offshore Int'l*, 311 S.W.3d at 924. This first factor is sometimes referred to as whether an alternate forum is "available." *See, e.g.*, *In re Oceanografia, S.A. de C.V.*, 494 S.W.3d 728, 732 (Tex. 2016) (orig. proceeding) (per curiam); *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 677–78 (Tex. 2007) (orig. proceeding) (plurality op.); *id.* at 683 (Willett, J., concurring); *cf. In re Ford Motor Co.*, 591 F.3d 406, 412–13 (5th Cir. 2009).

The Supreme Court of Texas has "held that the defendant had demonstrated the availability of an adequate forum [in Mexico] by stipulating that it would submit to personal jurisdiction in Mexico and would not assert a statute-of-limitations defense." *Oceanografia*, 494 S.W.3d at 732 (citing *Pirelli Tire*, 247 S.W.3d at 677–78 (plurality op.)).

In their joint motion to dismiss in the trial court, FGL and the ABS Entities argued that all defendants in the action "have agreed to submit to jurisdiction in Mexico for purposes of this dispute" because employees of each of FGL, ABS, and ABS Group, respectively, averred in the trial court that if "Plaintiffs proceed with the same or substantially the same claims in an appropriate court in Mexico, [FGL, ABS, and ABS Group, respectively,] agrees not to assert any objection to the Mexican court's personal jurisdiction or its equivalent over it for purposes of that proceeding only." FGL reurges this argument in its petition before us, which the ABS Entities have joined in and adopted by reference.

FGL and the ABS Entities also provided the trial court, and rely on before us, an affidavit of an attorney licensed to practice in Mexico. The attorney averred that, "[b]ased on the facts asserted in the Plaintiffs' Original Complaint, Mexican law would provide a basis for jurisdiction, in a Mexican forum, over Defendants" ABS, ABS Group, and FGL, "as well as other potential parties including but not limited to" the *Troll Solution*'s owner and operator; the vessel's managing

8

company; and Mexico's national oil company, which was the entity to which the *Troll Solution* was contracted at the time of the incident.

Plaintiffs respond in two ways. First, they argue that the affidavits are silent about whether FGL and the ABS Entities would assert limitations defenses in Mexico's courts. If they did assert them, that would arguably make the alternative Mexican forum unavailable. Second, relying on common-law *forum non conveniens* authority, Plaintiffs argue that not only the defendants but also "the entire case and all the parties" must "come within the jurisdiction" of the alternative forum. They argue that this suit fails that test because it is unclear whether "claims brought by a Polish plaintiff and an Indian plaintiff" could be adjudicated in Mexico's courts.

FGL replies that it "would waive a limitations defense assuming Plaintiffs . . . refile the case in Mexico within a reasonable amount of time. Such an issue could also be remedied through a return jurisdiction clause." The ABS Entities do not address limitations one way or the other before us.

Our Supreme Court's precedents and FGL's representations result in this first factor pointing to dismissal. The limitations concern as to FGL is disposed of by *Oceanografia*'s reasoning from *Pirelli Tire*: when the defendants agree to submit to personal jurisdiction in the alternative forum and to decline to assert limitations defenses, the alternative forum is available. 494 S.W.3d at 732 (citing

9

*Pirelli Tire*, 247 S.W.3d at 677–78 (plurality op.)). FGL has done so. And though the ABS Entities have not represented that they would similarly waive limitations defenses in Mexico's courts, the trial court's use of a return-jurisdiction clause in the dismissal order would remedy this. *See Pirelli Tire*, 247 S.W.3d at 677–78 (plurality op.).

As for the Polish and Indian plaintiffs, we may not rely on their country of citizenship or national origin because the Legislature added to Section 71.051(e) that "[t]he determination of whether a claim may be stayed or dismissed under Subsection (b) shall be made with respect to each plaintiff . . . without regard to a plaintiff's country of citizenship or national origin." *See* Act of May 22, 2015, 84th Leg., R.S., ch. 537, §§ 1, 3, 2015 TEX. GEN. LAWS 1918, 1918–19. This language became effective in June 2015—*id.*—and neither the Supreme Court nor our court have interpreted it yet. Because of this restriction, and because the parties point us to no suggestion in the record about whether Mexico's courts would hear these two plaintiffs' claims, we go only as far as the Supreme Court did in *Oceanografia*: "The first . . . factor[] clearly weigh[s] in favor of dismissal. Plaintiffs may try their claims in Mexico, where all but one of them reside, and defendants have stipulated to jurisdiction there." 494 S.W.3d at 732. Because the two plaintiffs at issue *reside* in India and Poland, respectively; because a single plaintiff's, out of about ninety, not residing in Mexico did not alter Mexico's courts' availability in *Oceanografia*;

10

and because nothing in the parties' briefing or the record suggests why two plaintiffs out of the about forty here should be analyzed any differently, we conclude that Mexico's courts offer an available alternative forum.

**B.      Mexico's courts provide an adequate remedy.**

Second, we must consider whether "the alternate forum provides an adequate remedy." TEX. CIV. PRAC. & REM. CODE § 71.051(b)(2). The forum does so if "the substantive law in the alternate forum would not deprive the parties of a remedy." *Oceanografia*, 494 S.W.3d at 732. "Lesser remedies will not make a forum inadequate; a forum is inadequate if the remedies it offers are so unsatisfactory they really comprise no remedy at all." *Id.* (citing *ENSCO Offshore Int'l*, 311 S.W.3d at 924–25). "A forum will not be inadequate simply because its laws are less favorable to plaintiffs." *Id.* at 733 (citing *Pirelli Tire*, 247 S.W.3d at 677–78 (plurality op.)). "Comparative analyses [of the rights, remedies, and procedures available in each forum] are relevant to a court's forum non conveniens decision only if a potential transfer would effectively result in no available remedy at all." *ENSCO Offshore Int'l*, 311 S.W.3d at 924–25 (citing *Gen. Elec.*, 271 S.W.3d at 688).

FGL and the ABS Entities again rely on the Mexico-licensed attorney's affidavit. The attorney averred that Mexico "has its own tort laws, competent courts of redress, and compensation scheme for civil and labor-related injuries."

He also averred that Mexican "laws and courts . . . offer Plaintiffs adequate remedy for any meritorious claims for compensation arising from the incident of May 5, 2015, which Plaintiffs contend caused them damages" and that, based on the facts as pleaded by Plaintiffs, "Mexican law provides remedies for the injury and death claims asserted," including "fair and just monetary compensation" if the claims prove meritorious. He averred that Mexican law would provide Plaintiffs a labor-based claim against their employers and a separate claim for "civil liability," both of which would afford Plaintiffs, if successful, "medical expenses and compensation for physical impairment." He went on to assert that the civil-liability claim could also afford Plaintiffs "moral damages," meaning damages awarded "against an offender who has affected [a plaintiff's] feelings, beliefs, honor, reputation, private life, physical configuration and aspect or the consideration the victim or others may have of him." As for procedures available in Mexico's courts, he stated that third parties can be compelled "to assist the Courts at all times to investigate the truth and to produce documents and objects in their possession whenever ordered to do so" and that third parties may be impleaded "at any time before the final hearing." Plaintiffs have not offered any contrary testimony from a person qualified to opine on Mexican law or procedure.

Also, FGL cites numerous decisions from the United States Court of Appeals for the Fifth Circuit and from federal district courts supporting the

12

proposition that Mexico's courts are routinely recognized as providing an adequate remedy for successfully adjudicated tort suits.

Plaintiffs respond that they base their claims on Texas and German law, not on Mexican law, and that Mexico's courts are either incapable of applying other jurisdictions' law or have a "strong historical preference to apply Mexican law to the exclusion of" other jurisdictions' law.

Evidence like the Mexico-licensed attorney's averments has sufficed under this factor. *See Lumenta v. Bell Helicopter Textron, Inc.*, No. 01-14-00207-CV, 2015 WL 5076299, at *5–6 (Tex. App.—Houston [1st Dist.] Aug. 27, 2015, no pet.) (mem. op.); *Vinson v. Am. Bureau of Shipping*, 318 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Lalila v. Parker Drilling Co.*, No. 01-07-00281-CV, 2009 WL 618248, at *5 (Tex. App.—Houston [1st Dist.] Mar. 12, 2009, no pet.) (mem. op.). Plaintiffs point to no evidence of their own to contradict the attorney's averments and do not attempt to show why they believe Mexican law provides them no remedy whatsoever for their claims. Though Plaintiffs may wish to apply Texas or German law, Mexican law nevertheless provides them a remedy, so Mexican law is not inadequate even if Plaintiffs would not prefer it. *See Oceanografia*, 494 S.W.3d at 732–33; *Pirelli Tire*, 247 S.W.3d at 677–78 (plurality op.); *id.* at 682 (Willett, J., concurring) ("Mexico indisputably has civil courts that entertain tort claims for its citizens who are injured in

13

Mexico."); *In re XTO Energy, Inc.*, No. 01-17-00652-CV, 2018 WL 2246216, at *5–6 (Tex. App.—Houston [1st Dist.] May 17, 2018, orig. proceeding) (mem. op.). We therefore conclude that this factor weighs in favor of dismissal.

**C.    The record is mixed about whether maintaining the action in Texas would work a substantial injustice to FGL and the ABS Entities.**

Third, we must consider whether "maintenance of the claim or action in the courts of this state would work a substantial injustice to" FGL and the ABS Entities. TEX. CIV. PRAC. & REM. CODE § 71.051(b)(3). This factor requires us to consider the location of relevant documents and evidence and whether a majority of witnesses may be reached by compulsory process in Texas. *See ENSCO Offshore Int'l*, 311 S.W.3d at 925; *Mantle Oil & Gas*, 426 S.W.3d at 192.

FGL argues that almost all of the relevant documents and evidence and a majority of the witnesses are located in Mexico, thereby subject to subpoena in Mexico but not subject to subpoena in Texas. The ABS Entities agree, relying on their affiant's averments that the four most recent surveys of the *Troll Solution* "were attended by an ABS office located in Mexico" and that "the incident central to Plaintiffs' claims [is] being investigated in Mexico in accordance with Mexican regulations." They also point to surveys "conducted by foreign subsidiaries or branch offices of ABS located outside the United States." According to them, this means that the cost of presenting those "foreign-based ABS surveyors for

14

deposition will be very similar whether the depositions occur in the United States or Mexico."

In response, Plaintiffs agree that deposition costs for presenting non-US-based ABS Entities witnesses are similar whether this suit is tried in Mexico or in Texas. More broadly, they argue that this suit's "witnesses and sources of proof" are to be "found across the globe, and that regardless of where an international lawsuit such as this is filed, *someone* will be inconvenienced." Plaintiffs also respond that litigating in Harris County should not be substantially unjust to FGL or to the ABS Entities because they have principal places of business and home offices in Houston and because they have often availed themselves of the state and federal courts located in Houston and of Texas substantive law.

The parties' competing arguments suggest both that documents, evidence, and many witnesses are in Mexico and that documents, evidence, and witnesses may be found elsewhere too, including in China, Germany, and Houston. The record evidence suggests that the *Troll Solution* was built exclusively in China. The evidence does not show that accessing evidence or witnesses from China will be more difficult in a Houston-based suit than in a Mexico-based one. The evidence also identifies the vessel's Shipmanager, Operator, Registered Owner, and Technical Manager as two entities having an "Address Location" in Germany,

15

though FGL argues that those entities are instead Mexican companies. As for the Mexico-resident plaintiffs themselves, they are voluntarily availing themselves of the jurisdiction of the Houston trial court. This lessens the concern of needing to reach those witnesses and any of their documents by compulsory process. Finally, the record suggests that FGL has Houston-based witnesses and documents relating to the initial-stage designs for the *Troll Solution* that were performed in Houston.

The several locales where relevant witnesses and documents may be found suggest that potentially relevant evidence is "scattered" across the globe. To hold at this stage that the importance of the Mexico-based evidence so outweighs the importance of the evidence that may be found in China, Germany, or Houston would encroach on the trial court's discretion over factual issues in *forum non conveniens* challenges, which we may not do. *See Mahindra, USA*, 549 S.W.3d at 550; *see also Torres de Maquera v. Yacu Runa Naviera S.A.*, 107 F. Supp. 2d 770, 780, 782 (S.D. Tex. 2000) (denying *forum non conveniens* dismissal because, in face of evidence "scattered" across globe, "*forum non conveniens* should not be invoked simply to shift the inconvenience from one party to another"); *accord Houston Helicopters, Inc. v. Canadian Helicopters Ltd.*, 901 F. Supp. 1225, 1233–34 (S.D. Tex. 1995). And the factual dispute over whether the entities with Germany "Address Location[s]" are in reality Mexican companies further reinforces the point—the factual record for the *forum non conveniens* analysis

16

under this factor is conflicting. We therefore conclude that the record for this factor is mixed about whether the Houston suit should be dismissed.

**D.      Mexico's courts can exercise jurisdiction over all the defendants.**

Fourth, we must consider whether "the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim." TEX. CIV. PRAC. & REM. CODE § 71.051(b)(4). As noted above, FGL and the ABS Entities represent that all defendants will be subject to personal jurisdiction in Mexico's courts, based on averments from their affiants and on the ABS Entities' joining in and adopting FGL's petition. The parties do not contest this factor any further. We conclude that this factor favors dismissal.

**E.      The parties' private interests and the state's public interests do not predominate one way or the other on the mixed factual record.**

Fifth, we must consider whether "the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum," including "consideration of the extent to which an injury or death resulted from acts or omissions that occurred in" Texas. TEX. CIV. PRAC. & REM. CODE § 71.051(b)(5).

17

### 1. *Private interests of the parties*

The private-interest factors are generally considered to be the ease of access to proof; the availability and cost of compulsory process; the possibility of viewing the premises, if appropriate; and other practical problems that make trial easy, expeditious, and inexpensive. *See ENSCO Offshore Int'l*, 311 S.W.3d at 926; *Gen. Elec.*, 271 S.W.3d at 691.

FGL supplies evidence about potentially relevant witnesses and documents located in Mexico:

- Forty of the Plaintiffs are citizens and residents of Mexico.

- The Plaintiffs were treated by Mexico-based healthcare providers.

- The Plaintiffs' employers are Mexico-based.

- The *Troll Solution*'s owner and operator and its manager are both Mexico-based.[2]

- The *Troll Solution* was contracted to Mexico's national oil company at the time of the incident.

- The investigators of the incident are Mexico-based, and, under Mexican regulations, metallurgical testing of samples taken from the *Troll Solution* was performed at a lab in Mexico.

FGL contrasts all this with "only . . . a handful of witnesses located in the Houston area, including any FGL engineers responsible for designing any particular aspect of the Vessel"; "one or two corporate representative(s) of FGL" from Houston; and

---

[2]     Subject to the factual dispute, discussed above, about these entities' having Germany "Address Location[s]."

"the only relevant documents located in the Houston area" being "design drawings prepared by FGL." FGL represents that its Houston-based witnesses "can easily testify in Mexico" but that many, if not most, of the Mexico-based witnesses would have difficulty testifying in Texas and that deposing those witnesses in Mexico would be expensive.

Similarly, the ABS Entities point out that "[t]he four most recent surveys of the Vessel were performed by ABS out of one of its offices in Mexico by surveyors located in Mexico" and that their Houston-area employees "are expected to have little relevant information."

FGL also argues that, because the incident took place in Mexican territorial waters, potentially viewing the premises counsels in favor of litigating in Mexico rather than in Houston.

Finally, FGL argues that certain Mexico-based non-parties may need to be impleaded in the suit, such as the vessel owner and operator, and that impleading them in a Texas suit presents jurisdictional problems that impleading them in a Mexican suit does not.

Plaintiffs respond by extensively analogizing this suit to *Vinson*. They also seek to undermine FGL's reliance on the location of Plaintiffs' medical and employment records in Mexico by representing that "Plaintiffs have already produced over 800 pages of medical records, billing records, and employment

19

documents" and that any further "records pertaining to the Plaintiffs . . . found in Mexico can be brought here." They also argue that viewing the premises is irrelevant for this suit. And they point to FGL's and the ABS Entities' Houston places of business and headquarters and to defendants' *forum non conveniens* motion's admission that "FGL engineers responsible for designing any particular aspect of the Vessel" may be in Houston. They infer from this that other witnesses and documents "will undoubtedly be found in the Houston area."

Further, Plaintiffs note the two potential Germany-based parties and the vessel manufacturer's location in China. Because of these connections, which may be equally as inconvenient for a Houston-based suit as for a Mexico-based one, Plaintiffs argue that dismissing the suit from Texas would simply "shift the inconvenience from one party to another."

In reply, the ABS Entities argue that Plaintiffs simply "speculat[e] that the ABS Entities have various documents in Houston," especially in light of the ABS Entities' affiants' averments that surveys of the vessel were undertaken entirely outside of the US and most recently in Mexico. And they and FGL both seek to undermine Plaintiffs' representation that records relevant to the Plaintiffs may be brought to Texas by arguing that the defendants would still need to examine witnesses related to those documents and that all such witnesses remain in Mexico.

Under the private-interest factors, *Vinson* is instructive. That case's defendants resided or were headquartered in Houston like FGL and the ABS Entities are. *See* 318 S.W.3d at 47–52. The evidentiary record in *Vinson* also involved testimony "that the files and documents relating to the [vessel upon which the plaintiff was injured], the collapse of the derrick, and the subsequent investigation are located partly . . . in Houston and partly . . . 'somewhere' in the United States." 318 S.W.3d at 45. Here, pre-incident design drawings for the *Troll Solution* may be in Houston, and the evidentiary record suggests that the rest of the ship-design documents are scattered across Mexico, China, and Germany. Dismissing this suit for refiling in Mexico does not resolve any inconvenience arising from the fact that evidence is scattered around the globe. Also, the location of the *Vinson* injured worker's medical records in Singapore did not favor dismissal of the suit for refiling in Singapore because the records had been provided to the defense already. 318 S.W.3d at 46. Here, Plaintiffs represent that they have already produced the relevant medical records to FGL and the ABS Entities.

The testimony in *Vinson* also suggested that no Singapore-based personnel were "directly involved in the design, engineering, or fabrication of the derrick." 318 S.W.3d at 48. Here, the record reflects that Houston-based personnel of FGL's or of the ABS Entities' were directly involved in the design for the vessel and that

21

the remaining design and construction took place likely in China and not in Mexico.

Also in *Vinson*, the program director involved in building the vessel, who was "the most knowledgeable person regarding the construction, collapse, and repair of the" vessel, worked primarily from Houston. 318 S.W.3d at 47 (internal quotations omitted). No single witness with singular knowledge of the *Troll Solution*'s construction, collapse, and repair is suggested by the record. Witnesses who could testify about the vessel's construction are in China, Germany, and Houston, even if the vessel's collapse and repair were centered in Mexico.

Finally, Plaintiffs assert that viewing the vessel and the premises of the incident is irrelevant to the underlying faulty-design dispute. At this stage, the record provides incomplete information about whether the Mexico-based evidence will outweigh the importance of any evidence located in Houston, China, or Germany.

With relevant evidence and witnesses in each of Houston, Mexico,[3] China, and Germany, the record regarding which evidence and testimony will likely prove

---

[3] The Houston trial court is not without tools to reach Mexico-resident witnesses: "their testimony can be obtained pursuant to international treaties without the need for them to travel to Texas." *In re Elamex, S.A. de C.V.*, 367 S.W.3d 879, 890 n.10 (Tex. App.—El Paso 2012, orig. proceeding) (citing *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 524 (1987); *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 643 (5th Cir. 1994)).

most important is still in dispute. The trial court was therefore presented a fact question upon which to exercise its discretion. Because ours is an abuse-of-discretion review, we conclude that the trial court did not abuse its discretion in concluding that the private-interest factors point toward retaining the suit against Houston-resident or Houston-headquartered entities in Houston. As our Supreme Court reasoned:

> Our review of the trial court's decision is for abuse of discretion. The abuse of discretion standard . . . "is especially appropriate when the trial court must weigh competing policy considerations and balance interests." "At its core, discretion means choice." Because a reviewing court cannot substitute its discretion for that of the trial court, to find an abuse when factual matters are in dispute, the reviewing court must conclude that the facts and circumstances of the case extinguish any choice in the matter.

*Mahindra, USA*, 549 S.W.3d at 550 (internal citations omitted).

### 2. *Public interest of Texas*

Generally, the public-interest factors to be considered are the administrative difficulties related to court congestion, burdening the people of a community with jury duty when they have no relation to the litigation, the local interest in having localized controversies decided at home, and trying a case in the forum that is at home with the law that governs the case. *ENSCO Offshore Int'l*, 311 S.W.3d at 927; *Mantle Oil & Gas*, 426 S.W.3d at 194.

23

### a. Court congestion

FGL argues that the time and resources needed to litigate this suit in Texas would lead to undesirable court congestion. It argues that "nearly all of the evidence is located in Mexico" and that "[m]uch of the relevant evidence is in the custody, possession, or control of non-party Mexican companies." It says that, therefore, "most of the relevant testimony and documents will require translation from Spanish to English," if the suit is tried in Texas, "requir[ing] an enormous amount of the trial court's and the litigants' time and resources."

Beyond these general representations, FGL does not explain how these considerations will affect court congestion. The record is silent with regard to court congestion in Houston and how this defective-design case against Houston-based defendants will unduly burden the court.

Plaintiffs respond that this suit will not congest the trial court's docket because it already had a trial setting in March 2018. Plaintiffs also fault FGL for failing to have "address[ed] which specific Mexican court's jurisdiction they will submit to, and . . . that specific court's congestion."

The ABS Entities reply that the now-passed March 2018 trial date "is a red herring" because that date was merely aspirational: "dozens of necessary depositions in Mexico" had yet to be taken, including those of the plaintiffs, their

treating physicians, others who were aboard the *Troll Solution*, and the Mexican authorities who investigated the incident.

The weight of the evidence under this first public-interest factor is mixed such that we cannot say that it extinguished any choice that the trial court had in the exercise of its discretion. *See Mahindra, USA*, 549 S.W.3d at 550.

> b. *Burdens of jury duty on the community versus the community's relation to the litigation and the local interest in resolving a local controversy*

To demonstrate Mexico's interest in the case, FGL supplies evidence that the Plaintiffs were treated for their injuries by doctors in Mexico and, at the time of the incident, were employed by Mexican companies and working on a Mexican-company-managed vessel. The vessel was servicing an oil well owned and operated by Mexico's national oil company, and the incident was investigated by Mexican investigators.

Plaintiffs respond that "the *Troll Solution* was designed in Harris County," giving Harris County's jury pool "a clear interest in holding" FGL and the ABS Entities "responsible for acts occurring within the County." FGL's affiant indeed averred that "FGL prepared the basic jack-up rig design at its office in Houston." Plaintiffs also rely on FGL's and the ABS Entities' business offices and headquarters in Houston and on the Harris County population's particular connection with offshore-oil-industry employment.

25

FGL's affiant described the design work that occurred at its offices in Houston as preliminary to a later "detailed design phase," which would be carried out by the manufacturer in China.

The ABS Entities reply that "ABS'[s] surveys [for the vessel] were performed by foreign subsidiaries or branch offices" outside of the US, citing their affiants' averments; that "none of the plaintiffs are citizens of Texas or the United States"; and that "the incident occurred on a foreign-flagged vessel outside of the United States."

Plaintiffs' reliance on FGL's affiant's averments and the ABS Entities' reliance on their own affiant's statements present disputed factual matters with regard to the extent of FGL's Houston-based designs' responsibility for any alleged liability, and to the extent of the ABS Entities' non-US-based surveys' similar responsibility. The factual record on these issues presents the court with a factual dispute. The analysis of these two public-interest factors presents fact questions upon which the trial court could exercise its discretion. We cannot say that the trial court abused its discretion in concluding that these two public-interest factors did not weigh in favor of dismissal of the suit. *See Mahindra, USA*, 549 S.W.3d at 550.

*c.    Whether Texas is at home with the law that will govern the case*

The parties disagree about what jurisdiction's law will govern the case, but, "[b]efore deciding a choice of law issue, a court first must identify a conflict of law." *In re CVR Energy, Inc.*, No. 01-15-00715-CV, 2016 WL 1389013, at *4 (Tex. App.—Houston [1st Dist.] Apr. 7, 2016, orig. proceeding) (mem. op.) (citing *Vinson*, 318 S.W.3d at 51). The parties do not identify any relevant conflict between Mexican, Texas, and German law, so we do not undertake a choice-of-law analysis. *See id.* ("Absent a conflict between Kansas and Texas law on this record, we do not undertake a choice-of-law analysis.").

### 3.    *Acts or omission in Texas*

When balancing the private and public interests, we must also consider the extent to which the injuries resulted from acts or omissions that occurred in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 71.051(b)(5); *Mantle Oil & Gas*, 426 S.W.3d at 197. The parties do not raise any further evidence here beyond FGL's argument that the rig collapse and many of its consequences occurred in Mexico and Plaintiffs' assertion that the rig was designed and supervised, at least in part, in Houston by Houston-based companies. The record for this factor is mixed.

### 4.    *Conclusion under public-interest factors*

Our conclusion under the public-interest factors is that the trial court was presented with a mixed record that was not so weighted to one side or the other as

27

to extinguish any choice or discretion in the matter. On this record, we cannot say the trial court abused its discretion in declining to dismiss the case based on its analysis of these factors.

**F.**     **The trial court had to balance competing interests in determining whether dismissal would not result in unreasonable duplication or proliferation of litigation.**

Sixth, we must consider whether "the stay or dismissal would not result in unreasonable duplication or proliferation of litigation." TEX. CIV. PRAC. & REM. CODE § 71.051(b)(6); *see ENSCO Offshore Int'l*, 311 S.W.3d at 928. Plaintiffs argue that the litigation already undertaken in Houston would be wasted effort if the suit is dismissed in favor of a Mexican forum. Though our Supreme Court has reasoned that "[c]oncerns about having to duplicate, in Mexican courts, the document discovery and depositions undertaken in the Texas courts may be addressed by agreements between the parties"—*see Oceanografia*, 494 S.W.3d at 732—the record is silent about the possibility of any such arrangements here. Duplicating litigation already undertaken can be avoided by continuing the case in Texas, where it has been on file for two years.

Litigating this suit in Mexico would allow for consolidation with any indemnity or contribution suits against Mexico-based parties, which a Texas court would have difficulty exercising jurisdiction over. *See ENSCO Offshore Int'l*, 311 S.W.3d at 928; *XTO Energy*, 2018 WL 2246216, at *12.

Because the trial court was called upon to balance these competing interests, we cannot say that favoring the former interest over the latter was an abuse of discretion. *See Mahindra, USA*, 549 S.W.3d at 550.

## G. Section 71.051(b) factors, as a whole

We conclude that there is no great weight of the evidence here which compels retaining this suit in Houston or dismissing it for refiling in Mexico. Even though Mexico's courts offer an alternate forum with an adequate remedy, the roughly forty Mexico-resident plaintiffs have chosen to avail themselves of a Houston court and to assert the applicability of Texas and German law. Their forum choice must be given weight. *See Mantle Oil & Gas*, 426 S.W.3d at 188. The public and private factors that could otherwise outweigh Plaintiffs' forum choice are mixed. We are therefore confronted with an evidentiary record in which "all the factors do not conclusively favor the alternative forum"; therefore, "we cannot say that the trial court abused its discretion in denying" the motion to dismiss for *forum non conveniens*. *See Mahindra, USA*, 549 S.W.3d at 550.

## Conclusion

We deny the petition. All pending motions are dismissed as moot.


                                        Russell Lloyd
                                        Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

29